IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| NASH FINCH COMPANY, ) | |
| ) | |
| Plaintiff, ) | Case No. 08 C 50003 |
| ) | |
| vs. ) | |
| ) | Honorable Philip G. Reinhard |
| NOLLER'S, INC., ) | Magistrate Judge P. Michael Mahoney |
| ) | |
| Defendant ) | |

### ANSWER AND AFFIRMATIVE AND OTHER DEFENSES

Defendant, Noller's, Inc. ("Noller"), by its counsel, states as its Answer to Plaintiff's Complaint as follows:

### PARTIES

1. Nash Finch is a Minnesota corporation with its principal place of business in Edina, Minnesota.

   **Answer:** Noller admits the allegations of Paragraph 1.

2. Noller's is an Illinois corporation with its principal place of business in Lena, Illinois.

   **Answer:** Noller admits the allegations of Paragraph 2.

3. James Noller is the owner of and registered agent for Noller's.

   **Answer:** Noller admits that James Noller is the registered agent for Noller. It denies that James Noller is the sole owner of Noller.

### JURISDICTION AND VENUE

4. This Court has diversity jurisdiction to hear this matter pursuant to 28 U.S.C § 1332, as the Parties are citizens of different states and Nash Finch's alleged damages exceed $75,000 exclusive of interest and costs.

**Answer:**   Noller admits the allegations of Paragraph 4.

5.   Venue is proper in the Northern District of Illinois, Western Division, in that the allegations described herein relate to property located in Lena, Illinois, which is in Stephenson County, Illinois.

**Answer:**   Noller admits the allegations of Paragraph 5.

## FACTUAL ALLEGATIONS

6.   Nash Finch is a wholesale distributor of groceries.

**Answer:**   Noller admits the allegations of Paragraph 6.

7.   During the relevant time period, Noller's owned and operated a grocery store located in Lena, Illinois ("the Grocery Store").

**Answer:**   Noller admits the allegations of Paragraph 7.

8.   Nash Finch and Noller's (""the Parties"") entered into several written agreements pertaining to the purchase, financing, and operation of the Grocery Store.

**Answer:**   Noller admits the allegations of Paragraph 8.

9.   On or about June 9, 2004, the Parties entered into a Retail Sales and Service Agreement (""the Agreement""). A true and correct copy of the Agreement is attached hereto as Exhibit A.

**Answer:**   Noller admits the allegations of Paragraph 9.

10.   Pursuant to the Agreement, Noller's was required to purchase 50% of its groceries from Nash Finch through the term of the Agreement.

**Answer:**   Noller admits only that the Agreement speaks for itself and denies any allegations in Paragraph 10 of Plaintiff's complaint which contradict the terms of the Agreement.

11.   Pursuant to paragraph 25 of the Agreement, the Agreement remains in effect through the longer of: (a) April 12, 2012; or (b) as long as Noller's owes any debt to Nash Finch.

**Answer:**   Noller admits that the Agreement speaks for itself and denies any allegations of Paragraph 11 of Plaintiff's complaint which contradict the terms of the Agreement.

12. The Parties performed consistent with the Agreement until March 2007.

**Answer:** Noller admits that at all times it performed consistent with the agreement and denies the remaining allegations of Paragraph 12 of the complaint.

13. On or about March or April 2007, Noller's sold the Grocery Store to J.B. Sullivan, Inc., an Illinois corporation. Upon information and belief, Noller's received in excess of $2,750,000 from that sale.

**Answer:** Noller admits that it sold the Grocery Store business and other assets to J.B. Sullivan, Inc., an Illinois corporation, on or about April 18, 2007. Noller denies the remaining allegations of Paragraph 13.

14. Following the sale of the Grocery Store, Noller's ceased purchasing any product from Nash Finch. But Nash Finch remained ready and able to perform under the Agreement.

**Answer:** Noller admits that after the sale of the Grocery Store, it no longer had any retail sales volume and no obligation to purchase any product from Nash Finch. Noller denies the remaining allegations of Paragraph 14.

15. Pursuant to paragraph 30 of the Agreement, a sale of the Grocery Store does not affect Noller's obligation to purchase product from Nash Finch.

**Answer:** Noller admits that the Agreement speaks for itself and denies any allegations in Paragraph 15 of the complaint which contradict the terms of the Agreement. Noller denies that it had any obligation to purchase any products from Plaintiff after it ceased doing business and denies the remaining allegations of Paragraph 15.

16. Also pursuant to paragraph 30 of the Agreement, in the event of a sale of the Grocery Store, any open account balance and any other debt owed by Noller's becomes immediately due and payable to Nash Finch.

**Answer:** Noller admits that the Agreement speaks for itself and denies any allegations in Paragraph 16 of the complaint which contradict the terms of the Agreement.

17. Pursuant to paragraph 27 of the Agreement, Nash Finch sent Noller's a statement demanding immediate payment of its lost profits through the term of the Agreement. A true and correct copy of that statement is attached hereto as Exhibit B.

**Answer:** Noller admits that Exhibit B speaks for itself and denies any allegations in Plaintiff's complaint which contradict the terms of Exhibit B. Noller denies

the remaining allegations of Paragraph 17. Noller also denies that it breached the Agreement or that it owes any sums to Plaintiff.

18. Nash Finch sent Noller's a second statement demanding immediate payment of its lost profits through the term of the Agreement. A true and correct copy of that statement is attached hereto as Exhibit C.

**Answer:** Noller admits that Plaintiff sent Exhibit C to Attorney Dan Fishburn. Noller admits that Exhibit C speaks for itself and denies any allegations in the Complaint which contradict the terms of that exhibit. Noller also denies that it breached the Agreement or that it owes any sums to Plaintiff.

19. Noller's refuses to pay the monies it owes Nash Finch under the Agreement. Nash Finch has and continues to suffer damages as a result of Noller's conduct, including its breaches, actions, and inactions.

**Answer:** Noller denies that it breached the Agreement and it denies that it owes any monies to Plaintiff. Noller denies the remaining allegations of Paragraph 19.

20. The Agreement provides no jury trial shall be provided for these types of disputes.

**Answer:** Noller admits that the Agreement speaks for itself and denies the allegations of Paragraph 20 which contradict the terms of the Agreement.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

21. For its first cause of action against Noller's, Nash Finch incorporates paragraphs 1 through 20 above and further states as follows.

**Answer:** Noller incorporates Paragraphs 1 through 20 of its answer as its answer to Paragraph 21 of the Complaint.

22. The actions of Noller's described above constitute a breach of the Agreement.

**Answer:** Noller denies the allegations of Paragraph 22.

23. As a result of this breach of the Agreement, Nash Finch has lost profits in excess of $75,000 and believed to be in excess of $380,000.

**Answer:** Noller denies the allegations of Paragraph 23.

## COUNT II
## PROMISSORY ESTOPPEL

24. For its second cause of action against Noller's, Nash Finch incorporates paragraph 1 through 22 above and further states as follows.

**Answer:** Noller incorporates Paragraphs 1 through 22 of its answer as its answer to Paragraph 24 of the Complaint.

25. Nash Finch entered into the Agreement with Noller's based upon the explicit or implicit representation of Noller's that the Grocery Store would continue to operate through the term of the Agreement.

**Answer:** Noller denies the allegations of Paragraph 25.

26. Nash Finch relied on the representation of Noller's in entering into the Agreement to Nash Finch's detriment in that Nash Finch did not enter into similar agreements with other grocery stores in the Lena, Illinois area during this time frame due to the existence of the Agreement with Noller's.

**Answer:** Noller denies the allegations of Paragraph 26.

27. Noller's should be estopped from claiming that Nash Finch did not rely on the actions of Noller's.

**Answer:** Noller denies the allegations of Paragraph 27.

28. As a result of Nash Finch's reliance on Noller's, Nash Finch suffered damages in excess of $75,000 and believed to be in excess of $380,000.

**Answer:** Noller denies the allegations of Paragraph 28.

WHEREFORE, Noller's, Inc. requests that this Court enter judgment in its favor and award it costs and such other relief as the Court deems just and proper.

## AFFIRMATIVE AND OTHER DEFENSES

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2. Noller had no obligation to purchase product from Plaintiff once Noller ceased doing business. *Schawk, Inc. v. Donruss Trading Cards, Inc.*, 319 Ill. App.3d 640, 746 N.E.2d 18 (1st Dist. 2001).

3. Plaintiff is not entitled to recover attorney's fees.

4. Plaintiff's claim of promissory estoppel fails because the relationship between Plaintiff and Noller is expressly governed by the terms and conditions of the Agreement. *Prentice v. UDC Advisory Services, Inc.*, 271 Ill. App.3d 505, 648 N.E.2nd 146 (1st Dist. 1995).

5. Plaintiff's claim of promissory estoppel fails because of the integration clauses found at paragraphs 33 and 45 of the Agreement.

6. Plaintiff's claim of promissory estoppel fails because of the statute of frauds. *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 678 (7th Cir. 2005).

## JURY DEMAND

Defendant demands a jury for the trial of said cause.

NOLLER'S, INC., Defendant, by its attorneys,
WILLIAMSMCCARTHY, LLP

BY: /s/ Scott C. Sullivan
Scott C. Sullivan

Scott C. Sullivan
Troy E. Haggestad
WILLIAMSMCCARTHY, LLP
P.O. Box 219
120 W. State St., Suite 400
Rockford, IL 61105-0219
Telephone: (815) 987-8900
Fax: (815) 968-0019

CERTIFICATE OF LAWYER

      The undersigned hereby certifies that on January 29, 2008, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alexander David Marks
Martin K. LaPointe
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Ave., 22nd Floor
Chicago, IL 60611-3607
amarks@burkelaw.com
mlapointe@burkelaw.com

      The undersigned further certifies that a copy of the foregoing document was served on the party named below, at their respective addresses shown below, by placing same in a properly addressed envelope, with postage prepaid, and deposited the same in the U.S. Mail at 120 W. State Street, Rockford, Illinois, before 5:00 p.m. this 29th day of January, 2008.

Barbara Jean D'Aquila
Cynthia A. Bremer
Fulbright & Jaworski L.L.P.
Suite 2100, IDS Center
80 South Eighth Street
Minneapolis, MN  55402

                                                     /s/ Scott C. Sullivan
                                                       Scott C. Sullivan

Scott C. Sullivan
Troy E. Haggestad
WILLIAMSMCCARTHY, LLP
P.O. Box 219
120 W. State St., Suite 400
Rockford, IL 61105-0219
Telephone: (815) 987-8900
Fax:  (815) 968-0019